**Allen L. BAKER, Plaintiff,**

v.

**SIEMENS ENERGY & AUTOMATION, INC., Defendant.**

**No. C–1–91–306.**

United States District Court, S.D. Ohio, W.D.

April 12, 1993.

Marc David Mezibov, Matthew Brownfield, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for plaintiff.

Robert Jennings Townsend, Taft, Stettinius & Hollister, Cincinnati, OH, for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendant Siemens Energy & Automation, Inc.'s ("Siemens") Motion for Summary Judgment (doc. 27), the Plaintiff's Response (doc. 29), the Plaintiff's Objections and Answers (doc. 30), the Affidavit of Paul Shepherd (doc. 31), the Affidavit of Helen Glutz (doc. 32), the Affidavit of Allen Baker (doc. 33), the Affidavit of Roger Larison (doc. 34), the Defendant's Reply (doc. 37), the Defendant's Motion to Supplement (doc. 42), and the Plaintiff's Response (doc. 43). In order to hear the arguments of the parties fully, the Defendant's Motion to Supplement is granted.

Both parties have submitted well-documented, excellent briefs which have been of great benefit to this Court in deciding the Defendant's Motion in this age discrimination case.

## BACKGROUND

Defendant Siemens is a German company which manufactures medium and large electrical motors at a plant in Norwood, Ohio. The Norwood plant is organized into a num-

ber of areas, including production, accounting, marketing, and engineering. Siemens manufactures the motors in the production area, which is divided into numerous sub-departments. Four of the sub-departments—welding, machining, manufacturing, assembly, and the foundry—are collectively referred to as "the shop." The shop has a mechanical side and an electrical side. This case directly involves the mechanical side of the shop.

The Plaintiff, Allen L. Baker, has worked at Siemens since 1956. Mr. Baker started as an hourly employee, but in 1973, he became a supervisor. During Mr. Baker's eighteen years as a supervisor, he received superior performance reviews.[1] His personnel file contains numerous commendations. He consistently ran his Department at 95% productivity, keeping absenteeism, overtime, and various other problems to low levels.

In May 1990, Mr. Baker's supervisor, Mr. McCain, gave him additional supervisory responsibilities in the rotor aisle, a part of the mechanical side of the plant. As a result, Mr. Baker had supervisory responsibility over two areas—the rotor aisle and the foundry. Mr. Baker was given these additional responsibilities in the rotor aisle for two reasons: (1) the area Mr. Baker supervised, the foundry, had decreased in importance; and (2) Mr. Baker had been a successful supervisor at Siemens for eighteen years. Mr. Baker knew that he was assigned to the rotor aisle to correct a poor production schedule. As of August 14, 1990, Mr. Baker had the highest performance review score of the ten supervisors on the mechanical side of the shop. Apparently, that performance re-

view was limited to Mr. Baker's work in the foundry.[2] Nevertheless, Mr. McCain told Mr. Baker at his performance review that he was doing fine work supervising the rotor aisle, too.

During the late summer of 1990, sales orders for Siemens' motors began to drop. By October 1990, upper management at Siemens, including plant manager Michael Kwiatkowski, determined that sales would remain depressed and that a reduction of hourly and salaried employees was necessary due to a lack of work. Management determined that no reduction of force could occur in the electrical department because that department was already thinly staffed. Consequently, Mr. Kwiatkowski asked George McCain, a general supervisor over the machine department, to select one of the ten mechanical supervisor jobs to be eliminated. Siemens' management did not instruct Mr. McCain as to how he should make his decision.

Mr. McCain selected Mr. Baker as the person whose job should be eliminated. In fact, Mr. McCain had determined in August 1990 that Mr. Baker should be removed as a supervisor from the rotor aisle.[3] Around August or September 1990, Mr. McCain and Mr. Kwiatkowski met individually with all the supervisors in the production area except Mr. Baker. At that time, Mr. Kwiatkowski's organizational charts showed the staffing of various departments. Mr. Baker did not appear in those organizational charts.

As with all personnel decisions, John Hoover, manager of personnel, reviewed Mr. McCain's decision.[4] Mr. Hoover determined that Mr. Baker's age was not a factor in Mr.

---

1. Of course, in deciding this Motion for Summary Judgment we have described these events in the light most favorable to the nonmoving party, Mr. Baker.

2. Neither party offered an explanation as to why Mr. Baker's performance review did not include his work on the rotor aisle.

3. Mr. McCain stated in his deposition that: "I didn't know there was a reduction [in force in August 1990]. I made up my mind that Allen [Baker] would not work out in [Department] 21 [the rotor aisle]. It had nothing to do with the reduction." *Deposition of George McCain*, at 121.

4. In addition, Mr. Kwiatkowski stated in his deposition that: "[t]here is no doubt that when he [Mr. McCain] made the selection of Mr. Baker that we would have had to have a communication on that." *Deposition of Michael Kwiatkowski*, at 77. Thus, in a sense, Mr. McCain, Mr. Hoover, and Mr. Kwiatkowski *all* determined that Mr. Baker should be demoted. Mr. McCain made the selection; Mr. Hoover reviewed and approved it; and, Mr. Kwiatkowski knew of the selection and condoned it, although he had the power to reverse it.

McCain's selection and affirmed the dismissal of Mr. Baker from his job as a supervisor. However, Mr. Hoover provided that Mr. Baker would be allowed to transfer to an hourly job in the foundry, rather than be fired.

Consequently, on November 19, 1990, Siemens' management demoted Mr. Baker to a lower-paying, hourly job without giving him reasons. In addition, Mr. Baker lost his right to certain employee benefits as a result of his demotion. At the time of his demotion, at age 53, Mr. Baker was the oldest, most senior, and most highly compensated supervisor in his area of the Siemens' plant.

In the following few months, Siemens had a blood-letting of employees. In November 1990, Siemens laid off or discharged thirty-six hourly employees. Five salaried employees were also terminated as a result of the reduction in force. In January 1991, forty-six hourly employees were laid off or discharged, and four salaried employees were transferred to hourly jobs. Twelve other salaried jobs were terminated. During March 1991, Siemens laid off twenty-four hourly employees, and Siemens either terminated or transferred to hourly jobs five salaried employees.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

Mr. Baker alleges that Siemens treated him differently because of his age in violation of the Age Discrimination in Employment Act ("ADEA") and state law. The issue in this case is not whether Siemens' officials treated Mr. Baker fairly or whether they made a proper business decision; rather, the issue is whether Mr. Baker's age was a determining factor in the decision of Siemens' officials to demote Mr. Baker. *See Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987) (noting that a plaintiff need only show that age was

"a" determining factor, not "the" determining factor in the employer's personnel decision); *James v. Gulf Broadcast Group, Inc.*, 793 F.2d 1292 (6th Cir.1986) (Case No. 85–3186) (published in WESTLAW, 1986 WL 17053, published in LEXIS). In other words, Mr. Baker must demonstrate that age was a factor in Siemens' decision to demote him, and that but-for this factor, he would not have been demoted. *See Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir.1993).

The three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), serves as a guideline to analyze Mr. Baker's claim. *See Chappell*, 803 F.2d at 265 (noting that the *McDonnell Douglas* analysis is "is generally applied in ADEA cases"); *see also Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991) (holding that Ohio courts should generally apply the *McDonnell Douglas* analysis in age discrimination cases); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). Under *McDonnell Douglas*, Mr. Baker must establish a *prima facie* case; in response, Siemens must offer legitimate, non-discriminatory reasons for its action; finally, Mr. Baker must then prove that Siemens' reasons were pretexts for intentional age discrimination. *See Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 312–15 (6th Cir.1989). Thus, Mr. Baker carries the ultimate burden of persuasion at trial to establish by a preponderance of the evidence that he was demoted because of his age. *See Rose v. Nat'l Cash Register Corp.*, 703 F.2d 225, 227 (6th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983).

### The Plaintiff's *Prima Facie* Case

■ A plaintiff must demonstrate four requirements to have a *prima facie* age discrimination case: (1) that he or she is a member of the protected class; (2) that he or she was demoted or fired; (3) that he or she was qualified for the position; and, (4) that he or she was replaced by a younger person. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982). These four crite-

ria, however, are not ironclad, and a plaintiff may present her case to a jury if the evidence creates an inference that she was terminated because of her age. *Bergman v. Bailey Controls Co.*, 1990 WL 140585, 1990 U.S.App. LEXIS 17353 (6th Cir. Sept. 27, 1990).

In Mr. Baker's case, he is a member of the protected class, because he is over age forty. *See* 29 U.S.C. § 631(b) (1992). Second, all parties agree that Siemens demoted Mr. Baker to a less desirable job.

■ Turning to the third requirement, the parties dispute whether Mr. Baker was qualified to remain as a supervisor. Mr. Baker's perceptions as to his qualifications are not relevant; instead, the determining factor is Siemens' perception of him. *See Ackerman*, 670 F.2d at 70. Thus, the issue is whether Mr. Baker "was doing his job well enough to meet his employer's legitimate expectations." *See McDermott v. Provident Life & Accident Insur., Inc.*, 956 F.2d 1164 (6th Cir. March 11, 1992) (published in WESTLAW, 1992 WL 46829) (quotations omitted).

■ In construing the evidence in the light most favorable to the non-moving party, Mr. Baker did a superlative job as a supervisor at Siemens. Mr. Baker's performance reviews were uniformly superior. As of November 14, 1990, Mr. Baker had the highest score on the latest round of performance reviews of any of the ten supervisors who worked on the mechanical side of the plant. Mr. Baker's *entire* personnel record—not his own subjective opinion—demonstrates his ability to perform the job of supervisor.

■ Finally, we turn to the fourth requirement a plaintiff must show to establish a *prima facie* case. Siemens maintains that Mr. Baker was demoted as part of a reduction in force. Mr. Baker argues to the contrary that a reduction in force was not involved in his demotion.[5] The Sixth Circuit has described a reduction in force in an earlier case:

---

5. In reduction in force cases, the plaintiff must come forward with additional direct, circumstantial, or statistical evidence that age was a deter-

mining factor in his or her termination. *Ridenour v. Lawson*, 791 F.2d 52, 57 (6th Cir.1986).

[a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned the plaintiff's duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990).

■ The Defendants contend that this Court should hold as a matter of law that Mr. Baker's demotion was part of a reduction in force. Siemens notes that all personnel decisions had to be approved by Mr. Hoover. The Defendant adds that Mr. Hoover did not approve of—or even have knowledge of—Mr. McCain's August 1990 decision to demote Mr. Baker from supervisor of the rotor aisle until after upper management decided to implement a reduction in force. Siemens notes that Mr. Baker cannot point to any person who was hired, promoted, or recalled to replace him in his job as supervisor. Furthermore, Siemens demoted Mr. Baker around the same time dozens of fellow employees were either being fired or demoted.

We find, however, that the facts are enigmatic surrounding Mr. Baker's demotion. Although, we recognize that a reduction in force generally is involved when a fired employee's work is redistributed among remaining workers, *Barnes,* 896 F.2d at 1465, we have not found that this case involves a reduction in force as a matter of law based upon a number of factors.

First, Mr. McCain decided to remove Mr. Baker from the rotor aisle *before* upper management at Siemens determined that a reduction in force was necessary. Mr. McCain predicated his decision on Mr. Baker's job performance in the rotor aisle, and not on

any pressing need to eliminate positions at Siemens. In fact, around August or September 1990, Mr. McCain and then Plant Manager Michael Kwiatkowski met individually with all the supervisors in the production area except Mr. Baker. At that time, Mr. Kwiatkowski's organizational charts showed the staffing of various departments without Mr. Baker. In viewing this evidence in the light most favorable to the non-moving party, Siemens' officials decided to rid themselves of Mr. Baker as a supervisor well before they decided a reduction in force was necessary. As a result, the fact that Mr. Baker's demotion took place around a time when other employees were being fired was, at best, coincidental, and, at worst, camouflaged age discrimination. Therefore, a reduction in force is not involved, because Siemens economic troubles did not **cause** Mr. Baker's demotion. *See id.* at 1465 ("[a] work force reduction situation occurs when business considerations **cause** an employer to eliminate one or more positions within the company") (emphasis added).

Second, Siemens did not give Mr. Baker any reasons for his demotion at the time. Surely, a reasonable finder of fact could expect a company to inform a worker of the company's financial hardship if the worker were being demoted for that reason. Third, since the 1990–1991 reductions in force, there have been several openings in supervisory positions at Siemens, but Mr. Baker has never been promoted to fill any of those positions. For these three reasons, we conclude that material questions of fact exist as to whether Mr. Baker's demotion was part of Siemens' reduction in force. *See generally, Moody v. Pepsi–Cola Metro. Bottling Co.,* 915 F.2d 201, 209 (6th Cir.1990) (finding that a jury could reasonably conclude that the alleged reduction in force was merely a pretext for discriminating against the plaintiff).[6]

■ Because this is not a reduction in force case as a matter of law, the *McDonnell Douglas* test is still applicable. Thus, we return to the fourth requirement Mr. Baker

---

6. Even if this were a reduction in force case, this Court would probably not dismiss Mr. Baker's case, because Mr. Baker could show through circumstantial evidence that Siemens retained younger, less qualified supervisors for jobs which Mr. Baker could perform just as well. *See Ridenour,* 791 F.2d at 57.

must demonstrate to establish a *prima facie* case—that Siemens replaced him with a younger person. Following Mr. Baker's demotion, Mr. Baker's job responsibilities were split between three supervisors. All three of these supervisors were under age forty at the time. Therefore, Mr. Baker has established all four elements of a *prima facie* claim for age discrimination. *See id.*

### The Defendant's Legitimate, Non–Discriminatory Reasons

■ Even though Mr. Baker has established a *prima facie* case of age discrimination, this will not defeat Siemens' Motion for Summary Judgment if Siemens had a legitimate, non-discriminatory reason for demoting Mr. Baker. *See Gagne,* 881 F.2d at 314.

Siemens argues that financial considerations required the company to demote Mr. Baker in order to reduce costs. *See Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1367 (7th Cir.1988) ("[r]educing the number of managerial employees can be a legitimate business decision"). Siemens notes that although Mr. Baker had extensive experience as a supervisor, he was a supervisor over the rotor aisle for only six months before his demotion. Furthermore, Siemens points out in its Memorandum various errors Mr. Baker made as supervisor over the rotor aisle.

However, Mr. Baker's review belies his lack of experience supervising the rotor aisle. On August 14, 1990, approximately three months after Mr. Baker began additional responsibilities working on the rotor aisle, Mr. McCain ranked Mr. Baker the highest among supervisors of the mechanical side of the shop for Mr. Baker's work in the foundry. At the same time, Mr. McCain told Mr. Baker that Mr. Baker was doing a good job supervising the rotor aisle. Ironically, this also appears to be approximately when Mr. McCain determined that Mr. Baker should be fired.

Our parent court considered a similar case in *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227 (6th Cir.1990). In *Kraus,* the defendant fired the plaintiff for alleged performance problems. The plaintiff's husband testified that within one month of his wife's discharge, the plaintiff's supervisor complimented her performance at a holiday dinner. *Id.* at 229. The Sixth Circuit held that the husband's testimony combined with the plaintiff's was sufficient to support a finding of pretext in response to a summary judgment motion. In so holding, the *Kraus* court distinguished *Gagne,* 881 F.2d at 309, because *Gagne* involved an employee whose personnel records reflected poor performance. *Kraus,* 915 F.2d at 231, n. 1.

In the case before the Court, Mr. Baker's personnel record was excellent—unlike the plaintiff in *Gagne.* Analogous to the plaintiff in *Kraus,* Mr. Baker had been told by his boss just before his demotion that he was doing a good job supervising the rotor aisle. Therefore, we conclude that a material issue of fact exists whether Mr. Baker's demotion was for a legitimate business reason or whether that demotion was a mere pretext for discrimination. *See generally, Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (a plaintiff may prove intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence"). The facts are not clear whether Siemens demoted Mr. Baker because of his age or because of his performance on the rotor aisle.

### The Plaintiff's State Law Claim

In Count V, Mr. Baker asserts a violation of public policy under Ohio Rev.Code § 4112.02(N), and claims that his demotion constitutes a wrongful discharge. *See Napier v. VGC Corp.,* 797 F.Supp. 602 (S.D.Ohio 1992) (holding that the 180–day statute of limitations of § 4112.02(N) applies to a case under § 4112.99). Mr. Baker does not contest this argument. Accordingly, the Defendant's Motion for Summary Judgment is granted on Count V of the Plaintiff's Complaint.

### The Plaintiff's Alleged Failure to File a Charge With the OCRC

Siemens contends that Mr. Baker's lawsuit should be dismissed because Mr. Baker never filed discrimination charges with the Ohio

Civil Rights Commission ("OCRC"). Under governing law, a plaintiff may not file a complaint under the Age Discrimination in Employment Act ("ADEA") until sixty days after the plaintiff has filed state administrative proceedings. 29 U.S.C. § 633(b); *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). In the complaint filed with the appropriate state agency, the plaintiff must present a written and signed statement describing his or her claim. *Id.* In Ohio, the OCRC is the administrative agency empowered to investigate age discrimination claims. Ohio Rev.Code § 4112.-04.

Mr. Baker contends that he complied with the law. On May 17, 1991, Mr. Baker forwarded a letter by registered mail to the OCRC setting forth the substance of his charge against Siemens. The letter described the essential facts giving rise to his age discrimination claim. Mr. Baker specifically requested that the OCRC consider the letter to be a charge of age discrimination against Siemens. Under its sharing agreement with the EEOC, the OCRC took no action on Mr. Baker's filing.

■ On the other hand, Siemens argues that Mr. Baker did not comply with the law, because the letter he sent to the OCRC was not under oath. Under Ohio Rev.Code § 4112.05(B), a charge filed with the OCRC must be under oath. Siemens concludes that Mr. Baker has never filed a charge under Ohio law, and therefore, this Court must dismiss his lawsuit.

We disagree. The Defendant's argument concentrates on the minutia and misses the over-arching purpose behind requiring a charge to be filed with the OCRC. As the *Oscar Mayer* court noted, unless the ADEA "is to be stripped of all meaning, state agencies must be given at least some opportunity to solve problems of discrimination." 441 U.S. at 757, 99 S.Ct. at 2072. Thus, the purpose behind forcing a plaintiff to wait sixty days before filing suit is to give the state agency the opportunity to remedy the dispute. *Id.* at 755, 99 S.Ct. at 2071.

In the case before this Court, the OCRC received a registered letter from Mr. Baker setting forth his dispute. Mr. Baker signed this letter and requested that the letter constitute a charge with the OCRC. Upon receiving Mr. Baker's letter, the OCRC had an opportunity to act on Mr. Baker's complaint. However, the OCRC chose not to act based upon its sharing agreement with the EEOC. Therefore, we conclude that Mr. Baker has filed an administrative charge with the OCRC. *See* Ohio Rev.Code § 4112.08 ("[t]he provisions of sections 4112.01 to 4112.08 of the Revised Code shall be construed liberally for the accomplishment of the purpose thereof. . . ."); *Ackman v. Ohio Knife Co.,* 589 F.Supp. 768, 770 (S.D.Ohio 1984) (Spiegel, J.) ("all that a claimant is required to do is present the state agency with a written and signed statement describing his claim of discrimination"); *Merkel v. Scovill, Inc.,* 570 F.Supp. 133, 136 (S.D.Ohio 1983) (Spiegel, J.) (same); *but see Powell v. Ohio Civil Rights Comm'n,* 51 Ohio App.2d 197, 367 N.E.2d 896 (Franklin Cty.1976) (holding that the OCRC does not have jurisdiction because the complainants filed a xerox copy of their writing under oath setting forth their dispute, instead of their original writing).

### The Plaintiff's Alleged Failure to Wait Sixty Days

Defendant Siemens also claims that it is entitled to summary judgment because Mr. Baker did not wait the requisite time to bring suit after filing a charge with the Equal Employment Opportunity Commission ("EEOC"). This matter will be dealt with in a separate Order.

### CONCLUSION

We carefully have reviewed the Defendant's Motion for Summary Judgment. At this juncture, we find that material questions of fact exist which preclude summary judgment. However, this Court will not hesitate in directing a verdict at trial if appropriate. Accordingly, the Defendant's Motion for Summary Judgment is denied.

**SO ORDERED.**