**Robert V. McDONALD,**
**Plaintiff–Appellant,**

v.

**UNION CAMP CORPORATION,**
**Defendant–Appellee.**

**No. 89–1253.**

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 9, 1989.

Decided March 22, 1990.

---

Martin R. Strum, Kalamazoo, Mich., Angela J. Nicita, Detroit, Mich., for plaintiff-appellant.

Jeffrey K. Ross, John T. Murray, Chicago, Ill., Barry R. Smith, Miller, Johnson, Snell & Cummiskey, Kalamazoo, Mich., for defendant-appellee.

Before JONES and RYAN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

The plaintiff-appellant Robert McDonald brought this action against his former employer, the defendant-appellee Union Camp Corporation (hereinafter Union Camp) alleging in Count I, that his termination from Union Camp's employ was a breach of employment contract, and in Count II, that he was discriminatorily discharged because of his age in violation of the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2101 *et seq.* (1985 & Supp.1988). The complaint was originally filed in the Circuit

Court for the County of Kalamazoo. However, on February 24, 1987, the defendant removed the case to the United States District Court for the Western District of Michigan on the basis of diversity jurisdiction. Title 28 U.S.C. § 1441. McDonald now appeals the judgment of the district court which directed a verdict for Union Camp on the breach of contract claim, and the order which granted summary judgment in favor of Union Camp on the age discrimination claim. We affirm.

## I.

Union Camp's Container Division manufactures corrugated containers, commonly known as cardboard boxes, at various plants located across the United States. Union Camp hired McDonald on January 25, 1960 at the Chicago box plant as a line supervisor. Thereafter, McDonald held various staff and supervisory positions with Union Camp, and in 1969, became the manufacturing manager for the Lapeer, Michigan box plant. In 1977, McDonald became the manufacturing manager for the Kalamazoo, Michigan plant as well as the Lapeer plant. He performed in this dual capacity until December 1980, when the Lapeer plant closed. McDonald remained as the manufacturing manager of the Kalamazoo plant until his employment was terminated in June 1986. As the plant manufacturing manager, McDonald had overall responsibility for the plant's actual manufacturing operations. The manufacturing supervisors reported to him, and he reported to the plant general manager, who had responsibility for the entire plant operation.

Union Camp reviewed the performance of its employees on an annual basis. The review was performed by the employee's immediate supervisor (in McDonald's case, the general manager). The evaluation was never shown to the employee, but was discussed with the employee to the extent the reviewer chose to do so. In addition, raises were based upon job performance; the better an employee's evaluation, the higher the raise would be. There was also a bonus system in effect for supervisory personnel called the Management Incentive System Bonus Plan. The employee was given bonus points at the end of the year based upon the extent to which he achieved the goals set; the more points received, the higher the bonus.

It is undisputed that throughout many years at Union Camp, McDonald received excellent performance assessments and received various raises and bonuses recognizing his performance. However, personnel records show that McDonald had been criticized over the years for his inability to communicate and get along with his superiors and subordinates. In fact, on several occasions, intermediate management officials recommended to the regional manager that McDonald be transferred or terminated. However, despite these recommendations, McDonald remained at the Kalamazoo plant since production and performance figures were good.

In 1985, Chris Bakaitis took over the position of General Manager of the Kalamazoo plant. At that time, personnel records showed that production was declining and that McDonald continued to have communication difficulties. In August 1985, Regional Manager Sutlive and General Manager Bakaitis placed McDonald on a sixty-day probation which called for "immediate and sustained improvement." McDonald objected to these evaluations and claimed that he was being subjected to age discrimination by his plant manager, Bakaitis.

Later, in March 1986, the new Regional Manager Carl Raglin, General Manager Bakaitis, and another executive met with McDonald to again discuss his performance. During this meeting, McDonald refused to acknowledge any unsatisfactory conduct on his part and claimed that his alleged communication difficulties were immaterial since his plant's production performance was excellent, and that any recent decline in production should not be held against him since production was down in all plants. Thereafter, McDonald was removed from the manufacturing manager's position and offered two other positions within the company, one as a Superintend-

ent of Maintenance and Engineering, and one as a Second Shift Finishing Supervisor. Although Union Camp offered to continue McDonald at his former salary, both positions were considered demotions. McDonald refused both offers, and his termination became effective on July 11, 1986.[1]

As a result, McDonald filed his complaint bringing claims of age discrimination and breach of employment contract. On January 4, 1989, the district court granted Union Camp's Motion for Summary Judgment with respect to McDonald's age discrimination claim. The court held that there was no material factual dispute with respect to McDonald's prima facie case of unlawful age discrimination since McDonald admitted that his superiors were dissatisfied with his job performance. The court further opined that even if McDonald had established a prima facie case of age discrimination, Union Camp had articulated legitimate business reasons for its decision, and McDonald had failed to present evidence raising a genuine issue of material fact as to whether Union Camp's reasons were pretextual.

At trial on the breach of employment contract claim, the district court utilized the provisions of Michigan implied contract law and found that based on representations made to McDonald, a reasonable juror could find that Union Camp had made a contract with McDonald under which McDonald could be discharged from Union Camp only for just cause. The court further found, however, that there was no evidence from which a reasonable juror could find that McDonald was promised continued tenure in any particular position. Consequently, the court reasoned that since Union Camp offered McDonald two other positions which McDonald rejected, no reasonable juror could find that the agreement was breached. Therefore, the court directed a verdict in favor of Union Camp. This timely appeal ensued.

1. McDonald's former position remained vacant until January 1988 when Union Camp hired John Pokerino, age 53, to fill that position. During the interim, McDonald's duties were

II.

According to the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2202(1)(a), an employer shall not discharge an employee because of age. This provision is similar to the federal Age Discrimination in Employment Act (ADEA) in that the same evidentiary burdens prevail. *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987); *Gallaway v. Chrysler Corp.*, 105 Mich.App. 1, 306 N.W.2d 368, 370–71 (1981) (adopting Sixth Circuit analysis in *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir.1975)). A Michigan plaintiff who alleges unlawful employment discrimination generally has three approaches at his disposal. First, he may proceed under the approach enunciated by the United States Supreme Court in the landmark case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The second approach is one delineated by the Michigan courts which generally examines whether age was a determinative factor in the plaintiff's discharge. Finally, a plaintiff may proceed by showing through circumstantial, statistical or direct evidence that he has been discriminated against.

A. *McDonnell Douglas* Approach

The traditional approach for proceeding under an employment discrimination claim was established in *McDonnell Douglas Corp. v. Green*, 441 U.S. 792, 99 S.Ct. 2400, 60 L.Ed.2d 646 (1973), and has been routinely employed in this circuit. *See, e.g., Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987); *Wilkens v. Eaton Corp.*, 790 F.2d 515 (6th Cir.), *reh'g denied*, 797 F.2d 342 (1986); *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir.1975). A plaintiff making such a claim carries the initial burden of proving by a preponderance of the evidence a prima facie case of age discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. This requires a showing that:

split among Bakaitis, age 36; Knapp, age 33; and Corbin, age 53. It is also significant to note that Pokerino, at age 53, was hired well after the commencement of this age discrimination suit.

(1) he was a member of a protected class (age 40 to 70);

(2) he was subjected to adverse employment action;

(3) he was qualified for the position; [and]

(4) he was replaced by a younger person.

*Simpson*, 823 F.2d at 940 (application of *McDonnell Douglas* to the age discrimination context). Proof of all four criteria raises a presumption of age discrimination. *Id.* If the plaintiff succeeds in proving the prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, should the employer carry this burden, the plaintiff then must prove by a preponderance of the evidence "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). This essentially amounts to a showing that the "presumptively valid reasons for his [discharge] were in fact a cover-up for a racially discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825.

■ Application of this standard to the instant case reveals that McDonald is unable to prove a prima facie case of age discrimination. There is no question that McDonald, age 53, is a member of the protected class; and indeed, he was terminated. Thus, the first two prongs are satisfied. However, McDonald is unable to prove the third prong of the *McDonnell Douglas* test, that he was qualified for the position.

In order to show that he was qualified, McDonald must prove that he was performing his job "at a level which met his employer's legitimate expectations." *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir.1983). Moreover, "[i]f [McDonald] was not doing what his employer wanted him to do, he was not doing his job.... [McDonald] does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir. 1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). In this case, McDonald does not dispute, but in fact acknowledges that his supervisors were dissatisfied with his job performance in the summer of 1986 when he was discharged. Instead McDonald argues that Union Camp made too big a deal out of his alleged "people problems." However, the aim is not to review bad business decisions, or question the soundness of an employer's judgment. *See Wilkens v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.1986). McDonald was simply not performing to Union Camp's satisfaction. Since McDonald concedes this point, there remains no genuine issue of material fact as to whether he was qualified. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Consequently, McDonald has failed to prove a prima facie case of age discrimination, and therefore, summary judgment under the *McDonnell Douglas* approach is appropriate.

B. Michigan Law Approach

■ According to the Michigan Supreme Court in *Matras v. Amoco Co.*, 424 Mich. 675, 385 N.W.2d 586 (1986), a plaintiff may establish a prima facie case of age discrimination under the Elliott–Larsen Civil Rights Act by demonstrating that age was a determinative factor in the employer's adverse employment action. Where the plaintiff proceeds on a theory of intentional discrimination, as in the case at bar,[2] the elements by which he may demonstrate that age was a determinative factor in discharging him are: (1) that he is a member of the affected class; (2) that some adverse employment action was taken against him; (3) that the person responsible for this adverse action was predisposed to discrimi-

---

**2.** In considering McDonald's claim with respect to Michigan law, the district court incorrectly applied the "disparate treatment" standard. Mc-

Donald does not allege that he was treated differently than those similarly situated, but rather that he was intentionally discriminated against.

nate against persons in the affected class; and (4) that the person responsible for this adverse action had actually acted on this predisposition with respect to the plaintiff. *See Brewster v. Martin Marietta Aluminum Sales, Inc.,* 145 Mich.App. 641, 378 N.W.2d 558 (1985); *Jenkins v. Southeastern Michigan Chapter American Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223 (1985); *Shipani v. Ford Motor Co.,* 102 Mich.App. 606, 302 N.W.2d 307 (1981); *Michigan Civil Rights Commission ex rel. Boyd v. Chrysler Corp.,* 80 Mich.App. 368, 263 N.W.2d 376 (1977).

■ Under this approach, McDonald satisfies the first two elements: that he was a member of the affected class and he was terminated. However, McDonald again fails to satisfy the third prong, that the person responsible for his discharge was predisposed to discriminate against persons in the affected class. McDonald argues that certain remarks made by his direct supervisor, Chris Bakaitis, indicate a clear case of age bias.[3] Assuming arguendo that Bakaitis was, in fact, predisposed to age discrimination, McDonald's argument is, nevertheless, without merit. McDonald was fired by Bakaitis' supervisor, Carl Raglin, and Bakaitis' discriminatory remarks are not attributable to Raglin. This circuit has held that a statement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official. *Stendebach v. CPC Internat'l Inc.,* 691 F.2d 735 (5th Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *see also La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405 (7th Cir.1984). Moreover, there is no evidence, nor has McDonald made such an allegation, that Raglin was predisposed to age discrimination.[4]

Consequently, there remains no genuine issue of material fact with respect to the third and fourth prongs. Thus, McDonald has failed to prove a prima facie case of age discrimination under the standard adopted by the Michigan courts, and therefore, summary judgment is appropriate.

## C. Direct, Statistical or Circumstantial Evidence Approach

Although the *McDonnell Douglas* standard has proven to be an effective means of resolving employment discrimination suits, not all cases are susceptible to its use. This court has repeatedly held that age discrimination suits should be decided on a case by case basis, and that rigid adherence to *McDonnell Douglas* should be discouraged. *Wanger v. G.A. Gray Co.,* 872 F.2d 142 (6th Cir.1989); *Merkel v. Scovill,* 787 F.2d 174 (6th Cir.), *cert. denied,* 479 U.S. 990, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982); *Sahadi v. Reynolds Chem.,* 636 F.2d 1116 (6th Cir.1980) (per curiam). "Instead of a mechanistic application of the *McDonnell Douglas* guidelines, a trial judge is to consider 'direct evidence of discrimination, and circumstantial evidence other than that which is used in the *McDonnell Douglas* criteria.'" *Wanger,* 872 F.2d at 145 (quoting *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983)). A plaintiff may present a prima facie case of age discrimination "by introducing evidence that he was adversely affected by the defendant's employment decisions 'under circumstances which give rise to an inference of unlawful discrimination.'" *Ridenour v. Lawson Co.,* 791 F.2d 52, 55 (6th Cir.1986) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

---

3. McDonald testified that Bakaitis once remarked that a senior salesman at age 55 "could be cheaply replaced with a younger salesman." McDonald further testified that on several other occasions, Bakaitis made comments involving age bias that were directed at McDonald.

4. In fact, on several occasions, when intermediate management officials recommended to Raglin that McDonald be discharged, Raglin dis-

regarded these recommendations and kept McDonald on. However, in 1986, after observing McDonald more closely, Raglin described McDonald as "stubborn, obstinate, and unwilling to adapt to changing management philosophies, or even simply to do what I told him to do." Raglin affidavit at 2. This is what led to McDonald's termination.

Moreover, whether analyzed in terms of Michigan's Elliott–Larsen Act or federal law, the same evidentiary burdens prevail. *Simpson*, 823 F.2d at 940. Consequently, once the plaintiff proves a prima facie case of discrimination, the burden of production shifts to the employer to "articulate some legitimate, non-discriminatory reason for the employee's [discharge]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer is successful, the presumption raised by the prima facie case is rebutted, thereby placing the ultimate burden of persuasion upon the plaintiff. *See Ridenour*, 791 F.2d at 56. The plaintiff must then "demonstrate that the [employer's] proffered reasons for its actions were pretextual." *Id.*

To prove a prima facie case of age discrimination, McDonald must present evidence indicating that age was a factor in Union Camp's decision to terminate him. McDonald's allegations focus primarily on comments made by General Manager Bakaitis, which were allegedly directed at McDonald. McDonald alleged that Bakaitis often commented to McDonald about the length of time he had been with the company and stated that his supervisory techniques were outdated. McDonald also claimed that during an office meeting, Bakaitis indicated that Bill Chapman, who was the plant's most senior salesman at age 55, should be replaced with a younger salesman who would be cheaper to employ. McDonald alleged that these types of remarks were not isolated incidents and were made by Bakaitis on several other occasions. Consequently, when viewed in a light most favorable to McDonald, we find that the pleadings and depositions raise an inference of discrimination sufficient to satisfy a prima facie case.

■ However, Union Camp has produced a legitimate, nondiscriminatory reason for its decision. McDonald's alleged "people problems" were well documented and dated back as far as 1970. Since McDonald was unwilling to change his methods to conform with Union Camp's wishes and refused to accept a different position, albeit a new position which essentially amounted to a demotion, Union Camp was left with no other alternative but to discharge McDonald.

With respect to pretext, McDonald argues that Union Camp made too big a deal out of his alleged "people problems," and that such was merely a cover-up for unlawful age discrimination. However, mere conclusory allegations are not sufficient to withstand a motion for summary judgment. *See Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). Furthermore, the fact that McDonald disagrees with Union Camp's assessment of his performance as manufacturing manager does not render Union Camp's reasons pretextual. As previously stated, McDonald does not raise a factual dispute by alleging that Union Camp made a poor business decision. *Kephart*, 630 F.2d at 1223; *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559–61 (7th Cir.) ("A reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination."), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987); *Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 255 (1st Cir.1986) (not enough to show employer made an unwise business decision). Finally, the allegedly discriminatory remarks made by Bakaitis are not attributable to Raglin, who was the ultimate decision maker. *See La Montagne*, 750 F.2d at 1412. Consequently, McDonald fails to raise a genuine issue of material fact that Union Camp's reason to discharge him was pretextual, and therefore, summary judgment is appropriate.

Thus, whether analyzed according to the dictates of *McDonnell Douglas*, the standard delineated by the Michigan courts, or the direct, statistical or circumstantial evidence approach, McDonald fails to raise a factual dispute sufficient to withstand summary judgment.

### III.

In his second count, McDonald alleged that his discharge was a breach of his employment contract. Specifically, Mc-

Donald alleged that, although he had no written employment contract, his employer's actions and representations created an implied contract not to be terminated except for just cause. In granting Union Camp's motion for directed verdict, the district court made two findings: (1) that certain representations made to McDonald, such as his "future being secure," provided sufficient evidence to create a jury question of whether an employment contract existed; and (2) that no reasonable juror could find a breach of that contract because there had been no promise to retain McDonald in the position of manufacturing manager. The court reasoned that since Union Camp had offered McDonald another position with the company with no reduction in salary, which he had refused to accept, there had been no breach of contract as a matter of law and that Union Camp had just cause to terminate him. In addition, the court permitted McDonald to amend his complaint pursuant to Fed.R. Civ.P. 15(b) to allege that he was constructively discharged when offered the demotions; the court, however, stated that this did not change its ruling and directed a verdict for Union Camp.

In actions where jurisdiction is based upon diversity of citizenship, federal courts are required to apply state law when determining whether there is sufficient evidence to present a case to a jury for resolution. *Gold v. National Savings Bank of the City of Albany*, 641 F.2d 430 (6th Cir. 1981), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981). Consequently, Michigan law must be applied in determining whether the trial court in the case at bar properly directed a verdict for Union Camp.

According to Michigan law, a trial court must conclude that reasonable persons could reach but one conclusion before directing a verdict. *Marietta v. Cliffs Ridge, Inc.*, 385 Mich. 364, 189 N.W.2d 208 (1971); *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057 (6th Cir.1983). Furthermore, the court must view all evidence in the light most favorable to the nonmoving party, "without weighing the credibility of wit-

nesses or considering the weight of the evidence...." *Gootee*, 712 F.2d at 1062. The same standard is applicable on appeal. *See Milstead v. Internat'l Brotherhood of Teamsters*, 580 F.2d 232 (6th Cir.1978). Applying this standard to the instant case, this court is compelled to affirm the judgment below.

It is generally recognized by Michigan courts and federal courts applying Michigan law, that employers' handbooks, policy statements and oral representations can create binding contractual obligations limiting the employers' right to discharge an employee at will. *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880 (1980). Such a provision may be created as a result of an employee's legitimate expectations based upon the employer's conduct and practices. *Id.* 292 N.W.2d at 885. However, an employee's mere subjective expectation that he will not be discharged except for just cause "is insufficient to establish a contract implied in fact." *Schwartz v. Michigan Sugar Co.*, 106 Mich.App. 471, 308 N.W.2d 459, 462 (1981). Ultimately, based upon an examination of the evidence, whether it be a personnel manual or oral statements relating to job security, the existence of a legitimate expectation of continued employment is a question for the trier of fact. *See Bullock v. Auto. Club of Mich.*, 146 Mich.App. 711, 381 N.W.2d 793 (1985).

McDonald produced the following evidence at trial: (1) statements made by upper-level management that he could expect job security as long as he did his job; (2) statements that if he did a good job, he could expect promotional opportunities; and (3) evidence of awards, salary increases and bonuses based on favorable evaluations. Clearly, this evidence creates an inference that McDonald had a contract implied in fact with Union Camp under which he could be discharged only for just cause.

The next inquiry concerns the terms of the contract. The district court found that the evidence could not support a finding that McDonald was promised the manufac-

turing manager's position, only that he was promised a position. McDonald, however, claims that there was sufficient evidence to infer that he was promised continued employment as a manufacturing manager, and consequently, when he was offered the demotions, he was effectively discharged.[5]

The question as to the terms of an implied contract is generally one for the trier of fact. *See Toussaint*, 408 Mich. at 613, 292 N.W.2d 880; *Farrell v. Auto Club of Michigan*, 155 Mich.App. 378, 386, 399 N.W.2d 531 (1986); *Bullock*, 146 Mich.App. at 719–20, 381 N.W.2d 793. In *Richards v. Detroit Free Press*, 173 Mich.App. 256, 433 N.W.2d 320 (1988), the court held that it was a question of fact for the jury whether the statements made to an employee created a right to a particular job. *Id.* 433 N.W.2d at 322. The *Richards* court further opined that "[a] demotion from one job to a lesser job is a discharge from the first job, and a demotion will support a wrongful discharge claim." *Id.* In the instant case, a reasonable juror could find that by promoting McDonald to manufacturing manager, he would not be demoted by Union Camp without just cause. Thus, unlike the district court, we find that a jury question exists as to whether the promises made to McDonald relating to job security applied to his job as manufacturing manager, or merely to his general employment with Union Camp. Despite this finding, however, if McDonald was terminated for just cause, it is immaterial which position he was entitled to.

The final issue is whether the contract was breached. Specifically, it must be determined whether McDonald's discharge was for just cause. Although this question is generally one of fact, *Toussaint*, 408 Mich. at 620–21, 292 N.W.2d 880, we hold that McDonald failed to present sufficient evidence to submit this issue to the jury and accordingly a directed verdict was properly granted. The evidence is un-

contradicted—McDonald was simply not living up to Union Camp's legitimate business expectations. McDonald clearly had problems motivating his subordinates and delegating authority; these problems were documented as far back as 1970. Furthermore, on at least two occasions, it was recommended that McDonald be discharged due to his inability or unwillingness to correct these problems. McDonald was not discharged, however, since he had been compiling favorable production numbers. However, during the year 1985, after McDonald was told that he would not be promoted to the Plant General Manager job, these manufacturing performance numbers for which McDonald was ultimately responsible began to trend in the wrong direction.[6] Consequently, Union Camp could no longer afford to overlook McDonald's deficiencies.

Examination of the record reveals that McDonald's presentation of proof contained no evidence of a wrongful discharge. McDonald acknowledged his personnel deficiencies but claimed that his dismissal was unwarranted. This is hardly a basis from which a jury could find in his favor, and we therefore decline to extend the *Toussaint* protections this far. Furthermore, McDonald, in his brief on appeal, impermissibly attempts to interject claims of age discrimination as a basis for a breach of contract claim. We have already ruled that McDonald was not discharged because of his age, *see supra*, and therefore, it is improper to reargue the point at this stage. *See Johns–Manville Corp. v. Guardian Industries Corp.*, 116 F.R.D. 97 (E.D.Mich. 1987) (issues decided at an earlier stage of litigation constitute the law of the case).

The wisdom of Union Camp's business decision is not at issue, rather the sole inquiry is whether Union Camp had just cause to terminate McDonald. In light of the overwhelming evidence of McDonald's

---

**5.** Since we ascribe to McDonald's contention in this respect, we need not address the issue of constructive discharge.

**6.** Corrugator tons per scheduled hour went down unfavorably, while the other three key indicators, man hours per ton, input ratio, and waste percentage all showed unfavorable increases. In addition, the plant received negative evaluations in April and May of 1986 in the regular housekeeping and safety inspections.

deficient job performance and McDonald's failure to present any credible evidence that his discharge was for any reason other than his "people problems," we hold that no reasonable jury could find that McDonald's discharge was not for just cause,[7] and therefore, the directed verdict was proper.

For the foregoing reasons, the order granting summary judgment in favor of Union Camp on the age discrimination count, and the judgment directing a verdict in favor of Union Camp on the breach of employment contract count are affirmed.

---

**7.** Moreover, even if the jury found that McDonald was not entitled to his job as manufacturing manager, but only to a job within the company, his eventual termination was for just cause since he rejected the other offers made to him after his demotion. The record shows that Union Camp spent a great deal of time and money trying to relocate McDonald to a suitable position within the company. Since McDonald rejected the offers that Union Camp thought he could handle, termination was the only alternative.