38 F.3d 1216
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 James MURPHY, Plaintiff-Appellant,
v.
CENTERIOR ENERGY CORPORATION, Defendant-Appellee.
 No. 93-4281.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1994.
 
 Before: CONTIE, MILBURN and DAUGHTREY, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff James E. Murphy appeals the district court's grant of summary judgment for defendant Centerior Energy Corporation on his 42 U.S.C. Sec. 1981 claim and his claim for retaliatory discharge under Title VII, 42 U.S.C. Sec. 2000e-5. On appeal, the issues are (1) whether the district court erroneously awarded summary judgment for defendant on plaintiff's race discrimination claim under 42 U.S.C. Sec. 1981, (2) whether the district court erroneously awarded summary judgment for defendant on plaintiff's claim for retaliatory discharge, and (3) whether the district court erroneously denied plaintiff due process by dismissing plaintiff's pendent state law claims. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On October 31, 1966, plaintiff James E. Murphy was hired as a union worker by The Toledo Edison Company ("the Company"), an operating company of defendant Centerior Energy Corporation. In 1984, plaintiff was promoted from electrical apprentice to the management position of Power Systems Foreman, which required that plaintiff relinquish his union membership. At that time, plaintiff was given a handbook that explained his employee benefits and stated that he was an "at will" employee. In 1987, plaintiff was assigned a new supervisor, James Carter. Because only non-union employees at the Company received performance appraisals, plaintiff was given his first appraisal in 1985. It is undisputed that from 1985 until 1990, plaintiff was given very good performance appraisals and received corresponding merit increases in pay. These appraisals were allegedly based solely upon technical skills. In 1990, the Company significantly changed its appraisal system to encompass not only technical skills, but an employee's ability to get along with others and accountability to the Company. Managers were trained in a management relations procedure called MARC (Management, Action, Response, Checklists). Supervisor Carter states in his affidavit that the new appraisal system, when applied to plaintiff, demonstrated a decline in plaintiff's performance.
 
 
 3
 In February 1991, plaintiff met with Carter and another manager to discuss a 10 percent pay differential that plaintiff believed he was entitled to receive. Carter explained to plaintiff that the pay differential had not yet been received by other employees. At the meeting, plaintiff was told that confidential management information had been improperly leaked to union employees and that two union employees had identified plaintiff as the source of the information. In addition, plaintiff was noted for not participating in a company sponsored team building exercise designed to improve the efficiency of the department.
 
 
 4
 On June 10, 1991, plaintiff was given his first appraisal under the new MARC guidelines. Plaintiff's rating decreased from a four on a scale of seven to a two on a scale of seven, which was still considered satisfactory. Carter gave the following reasons for the evaluation: plaintiff had not made a clear-cut transition from union to management; plaintiff had not established proper channels of communication with other departments; plaintiff did not properly document or coordinate test schedules of equipment; plaintiff lacked knowledge in the communication system to control the budget and costs; and on several occasions, plaintiff had engaged in conduct that bordered on insubordination. Following the evaluation, on June 18, 1991, plaintiff received a special assignment of locating spare electrical parts to be used at a nuclear power station. Carter states that plaintiff was given this task because he possessed the necessary technical skills, and it would give plaintiff an opportunity to prove that he could communicate with other departments and document effectively, areas identified as weaknesses in the evaluation.
 
 
 5
 According to the Company, plaintiff's job performance continued to deteriorate following the review on June 10, 1991. On October, 23, 1991, it was learned that plaintiff had not purchased raincoats for his crews in accordance with normal Company procedures. On October 29, 1991, plaintiff engaged in a public argument with another management employee over labor issues. On October 30, 1991, a union steward informed Carter that plaintiff had shared confidential information with him. There were also two incidents in November 1991, where plaintiff could not locate equipment necessary to complete a special project, which Carter concluded were due to plaintiff's failure to make thorough inspections. Finally, on January 2, 1992, plaintiff sent crews to a maintenance job even though the job had been crossed off as "complete." In Carter's affidavit, he stated that plaintiff had been informed that the special project at the nuclear power station had not been satisfactorily completed because plaintiff failed to provide accurate lists of spare parts, failed to list items stored at a warehouse by location, and failed to document the current status of the customer substation inspection program.
 
 
 6
 On March 25, 1992, plaintiff was informed that he no longer had a position as a Power Systems Foreman and was offered the opportunity to interview for another position, which he was not awarded. The Company terminated plaintiff as an employee on April 15, 1992. On June 24, 1992, plaintiff filed a complaint in the district court alleging violations of Title VII along with pendent state law claims. It appears that this action stemmed from a charge of discrimination that was filed with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on January 9, 1992. Plaintiff received a right-to-sue letter for this charge on September 17, 1992, after his employment was terminated. Plaintiff's action was dismissed without prejudice on November 23, 1992, because plaintiff had not obtained a right-to-sue letter regarding his Title VII claims at the time the his action was filed, and the district court declined to exercise pendent jurisdiction over the state law claims.
 
 B.
 
 7
 On July 23, 1993, plaintiff James E. Murphy filed the action which is the subject of this appeal. Plaintiff alleges that he was terminated from his employment with the Company because of his race in violation of 42 U.S.C. Sec. 1981 and that he was terminated in retaliation for filing a previous civil rights claim, and he also sues for intentional infliction of emotional distress and breach of implied contract. On September 9, 1993, defendant Centerior Energy Corporation filed a motion for summary judgment, which was supported by the deposition of plaintiff and affidavits of Denise Hasbrook and James Carter. Plaintiff filed a memorandum in opposition on October 6, 1993, which was supported by plaintiff's affidavit, the affidavits of twelve of plaintiff's subordinates, and the affidavit of a psychologist. On October 13, 1993, defendant filed a reply memorandum and filed a motion to strike certain portions of the affidavits supporting plaintiff's memorandum in opposition.
 
 
 8
 On October 20, 1993, the district court issued a memorandum opinion finding that plaintiff failed to establish a prima facie case for race discrimination and retaliation. It dismissed plaintiff's Sec. 1981 discrimination claim and retaliation claim with prejudice and dismissed the pendent state law claims without prejudice. The accompanying judgment entry correctly stated that the Sec. 1981 claim was dismissed with prejudice, but it incorrectly stated that the retaliation claim and state law claims were dismissed without prejudice. Defendant moved the district court to correct its typographical error concerning the retaliation claim. On November 12, 1993, the district court entered an Order that reflected that the district court granted defendant's motion for summary judgment on the Sec. 1981 and retaliation claims, and dismissed plaintiff's state law claims "without prejudice." J.A. 39. The accompanying amended judgment entry, however, provided that the summary judgment was granted on the discrimination and retaliation claims, but that plaintiff's state law claims were dismissed "with prejudice." J.A. 40. On November 19, 1993, before the district court had an opportunity to correct the typographical error in the amended judgment entry, plaintiff filed a timely notice of appeal.
 
 II.
 A.
 
 9
 This court reviews a district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). On appeal, we must consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, 369 U.S. 654, 655 (1962)); 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 10
 Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); see Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. Id. at 324. "By its very terms, the standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). Material facts are only those facts that might affect the outcome of the action under governing law. Id. at 248; Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991).
 
 
 11
 The role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citation omitted). The Supreme Court explained,
 
 
 12
 If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judges inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict--"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."
 
 
 13
 Id. at 252 (quoting Improvement Co. v. Munson, 14 Wall. 442 (1872)) (emphasis in original); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir1989). With these general principals in mind, we now turn to the substantive law governing plaintiff's claims.
 
 
 14
 Plaintiff argues that the district court erroneously awarded defendant summary judgment on plaintiff's 42 U.S.C. Sec. 1981 claim for race discrimination. Specifically, plaintiff asserts that the district court erred in ruling that plaintiff was not qualified for his position and that the district court erred as a matter of law in determining that plaintiff failed to demonstrate that defendant's articulated reason for terminating him was pretextual.
 
 
 15
 To succeed on a claim for purposeful discrimination under Sec. 1981, a plaintiff must set forth the same elements as required for a Title VII claim. Patterson v. McLean Credit Union, 491 U.S. 164, 184 (1988). To establish a prima facie case, a plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Chappell v. GTE Prods. Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. Id.; see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in his termination. McDonnell Douglas, 411 U.S. at 802. The plaintiff may meet this burden by showing (1) that the stated reasons had no basis in fact, (2) that the stated reasons were not the actual reasons, or (3) that the stated reasons were insufficient to explain the employer's action. Wheeler v. McKinley Enterprises, 937 F.2d 1158, 1162 (6th Cir.1987). However, the ultimate burden of persuasion always remains with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747 (1993).
 
 
 16
 In this case, defendant conceded, for the purpose of ruling on the motion for summary judgment only, the first, second, and fourth elements of the prima facie case. Thus, the only element in dispute is the third element--whether plaintiff was qualified for the position. To show he is qualified, plaintiff "must prove that he was performing his job 'at a level which met his employer's legitimate expectations.' " McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir.1990) (quoting Huhn v. Koehring, 718 F.2d 239, 243 (7th Cir.1983)). On summary judgment, once the moving party has pointed to record evidence showing that there are no genuine issues of material fact, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue of a material fact. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir.1992). The district court concluded that plaintiff failed to point to anything in the record which would raise a genuine issue of material fact. Therefore, it found that plaintiff did not demonstrate that he was qualified for the position and that he failed to establish a prima facie case.
 
 
 17
 Plaintiff offers the following as evidence that he was qualified for his position: his good performance appraisals prior to 1991; the lack of disciplinary action against him; affidavits of subordinates who stated he did a good job; the affidavit of a psychologist who assessed plaintiff's relationship with his supervisor; and plaintiff's own deposition testimony. The district court apparently considered only the prior evaluations and the lack of disciplinary action in concluding that there was no genuine issue as to whether plaintiff was qualified. Because we review the district court's grant of the summary judgment de novo, we shall consider all of the evidence offered by plaintiff.
 
 
 18
 The performance appraisals fail to raise a genuine issue as to plaintiff's qualifications on the date of his termination because they merely show plaintiff was a satisfactory employee from 1985 through 1990; plaintiff was terminated for incidents that occurred following his June 1991 review. The lack of disciplinary action also does not prove that plaintiff's performance met defendant's legitimate expectations, especially in light of plaintiff's deteriorating job performance, and thus does not raise a genuine issue of material fact as to plaintiff's qualifications. The affidavits of plaintiff's subordinates are irrelevant because plaintiff's qualifications and performance are not judged from the perspective of plaintiff's subordinates but are based on defendant's legitimate expectations. The psychologist's affidavit, which incorporates an assessment report dated April 10, 1991, also does not raise a genuine issue of material fact as to plaintiff's qualifications on the date of his termination because the report predated the incidents that formed the basis for plaintiff's termination, all of which occurred following plaintiff's June 1991 review. In summary, none of the evidence offered by plaintiff is significantly probative as to the issue of plaintiff's qualifications.
 
 
 19
 Plaintiff argues that the district court misapplied McDonald insofar as it ignored evidence that the employer's judgment was not credible. Specifically, plaintiff argues that the evidence, which is more than a bald challenge to defendant's judgment, demonstrates that there was a sound basis on which to question whether defendant's judgment had a bona fide basis in fact. We must reject this argument on the basis of our reasoning in McDonald. In McDonald, an age discrimination case, the plaintiff acknowledged that his supervisors were not satisfied with his job performance, but argued that his employer was overly concerned with his "people problems." McDonald, 898 F.2d at 1160. We held that the plaintiff failed to prove a prima facie case of age discrimination because the plaintiff did not " 'raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors.' " Id. (quoting Wilkins v. Eaton Corp., 790 F.2d 515, 521 (6th Cir.1986)). We reasoned that "the aim is not to review bad business decisions, or question the soundness of an employer's judgment." Id. Further, an employer may make a subjective judgment to discharge an employee for any nondiscriminatory reason, especially when a management level job is involved. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982). In this case, plaintiff's challenge to defendant's judgment must fail where it is supported only by evidence of a history of good performance, especially in light of the overwhelming, uncontroverted evidence of poor performance that supports defendant's judgment. Thus, neither plaintiff's challenge to defendant's judgment nor any of the evidence offered by plaintiff creates a genuine issue of material fact as to plaintiff's qualifications.
 
 
 20
 Accordingly, we conclude that the district court did not err in granting defendant's motion for summary judgment because defendant was entitled to summary judgment as a matter of law since plaintiff failed to establish a prima facie case of discrimination under Sec. 1981. Because plaintiff failed to establish a prima facie case, the burden never shifted to defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's termination. Therefore, we need not address the issue of whether the district court erred in determining that plaintiff failed to demonstrate that defendant's articulated reason for terminating him was pretextual.
 
 B.
 
 21
 Plaintiff argues that the district court erred by dismissing plaintiff's claim for retaliatory discharge on the basis that no evidence established a causal connection between the protected activity and the adverse employment action. Plaintiff contends that he presented evidence sufficient to create an inference of causation and that defendant did not eliminate material fact issues as to causation. In order to prove a claim of retaliatory discharge, a plaintiff must establish (1) that he engaged in an activity protected by Title VII, (2) that he suffered adverse employment action, and (3) that there is a causal link between the protected activity and the adverse action of his employer. Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir.1986). The only issue on appeal is the third element--the causal link. Plaintiff suggests that a permissible inference of causation and retaliation arise from the timing of the discharge, which was three months after plaintiff allegedly filed a complaint with the OCRC and EEOC in January 1992. There is no other evidence in the record supporting the causal link. In Cooper, this court stated that an inference of retaliation could not be supported based merely on the fact that the plaintiff was discharged four months after filing a discrimination complaint. Id. We likewise conclude that the mere fact that plaintiff was discharged three months after filing a discrimination complaint is insufficient to support an inference of a causal link between the protected activity and the adverse action of his employer, particularly where the Company expressed dissatisfaction with plaintiff's performance before the complaint was filed. See Brown v. ASD Computing Ctr., 519 F.Supp. 1096, 1116 (S.D.Ohio 1981) (determining that a three month period between the employee's announcement of an intention to consult with the EEOC and her termination did not provide the inference necessary to establish a prima facie case of retaliation). Accordingly, because plaintiff failed to establish a prima facie case of retaliatory discharge, it was not error for the district court to grant defendant's motion for summary judgment on plaintiff's retaliation claim.
 
 C.
 
 22
 Finally, plaintiff argues that the district court denied plaintiff due process by granting defendant's motion for summary judgment on his federal claims and by dismissing the pendent state law claims with prejudice. As to the federal claims, plaintiff argues that the district court misapplied the law and failed to recognize the existence of serious factual questions. We have reviewed the district court's grant of summary judgment de novo and must agree that summary judgment was not only a proper, but the favored disposition of these claims because there was no genuine issue as to any material fact and defendant was entitled to judgment as a matter of law. See Celotex, 477 U.S. at 327. With regard to the pendent state law claims, plaintiff asserts, and defendant agrees, that the state law claims should have been dismissed without prejudice. In an order dated November 12, 1993, the district court stated that it "dismissed the state law claims without prejudice," J.A. 39 (emphasis added), but it incorrectly stated in the accompanying amended judgment entry that the "state law claims are dismissed with prejudice," J.A. 40 (emphasis added). Accordingly, the district court should modify the amended judgment entry to correctly reflect that the state law claims were dismissed without prejudice. However, we conclude that the district court did not deny plaintiff due process by granting summary judgment on his federal claims or by dismissing his state law claims without prejudice.
 
 III.
 
 23
 For the reasons stated, the district court's grant of summary judgment is AFFIRMED, but the district court is directed to modify its amended judgment entry to provide that the state law claims are dismissed without prejudice.