96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Medhat KORNA, Plaintiff-Appellant,
v.
VEDA, INC., Defendant-Appellee.
 No. 95-3798.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1996.
 
 Before: MERRITT, Chief Circuit Judge; COLE, Circuit Judge; and DUGGAN, District Judge*.
 MERRITT, Chief Judge.
 
 
 1
 This appeal from a grant of summary judgment for defendant arises from the termination of an employment relationship. Plaintiff alleges that his termination was illegally based on his religion (Muslim) and national origin (Egyptian) in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) et seq. Plaintiff also claimed that the defendant was estopped from firing him because he was promised employment for a certain duration of time. The District Court granted defendant's summary judgment motion on both claims. Because it appears that plaintiff was terminated for legitimate, non-discriminatory business reasons and because plaintiff was an at-will employee with no promise of employment for a specified term, the decision of the District Court is affirmed.
 
 I.
 
 2
 Plaintiff, Medhat Korna, is a native-born Egyptian and practicing Muslim. Plaintiff is trained as a mechanical engineer. Plaintiff left his previous job to take a job with defendant, Veda, Inc. as a project manager on an Air Force contract to design jet cockpits. Plaintiff was the only known Muslim at Veda.
 
 
 3
 Plaintiff's first annual evaluation from Veda, in April 1992, was very good. Joint Appendix[1] at 420-29. During plaintiff's second year of employment he was instructed by his immediate supervisor, Michael Rountree, to terminate one of the project employees, Sheila White. Plaintiff was Ms. White's immediate supervisor. As instructed by Mr. Rountree, plaintiff created a paper trail that would justify firing Ms. White. After Ms. White was terminated, she wrote a letter to the President of Veda, Marc Ross, complaining about the unfair treatment she received from plaintiff. J.A. at 418. The termination of Ms. White apparently caused tension between plaintiff and his other subordinates who objected to Ms. White's termination. As a result of Ms. White's letter to Mr. Ross, Rountree, Arthur Dobrzelecki, the General Manager of Veda, and James Canaday, a vice-president of Veda, conducted interviews with plaintiff's subordinates to inquire about plaintiff's performance. These interviews were conducted with plaintiff's knowledge but without his input. J.A. at 430-32. As a result of the interviews, plaintiff was counseled to improve his management style and was told he would be reviewed monthly for the following three months. At the end of three months, the situation between plaintiff and his subordinates seemed improved, although plaintiff admitted that he had not changed his management style.
 
 
 4
 Plaintiff was given his second annual review in May 1993. His evaluation was in the "performs as expected" range, although it was considerably lower than the evaluation the previous year. In early June 1993, defendant Veda received another complaint from a subordinate of plaintiff who had recently quit, Michael Sweeney. Mr. Sweeney told Veda that he quit partially because he did not like working for plaintiff. Later that month, after several meetings with key personnel from the U.S. Air Force, the customer for which Veda was undertaking the cockpit project, and hearing that they also had some concerns with the progress of the project and with plaintiff in particular, plaintiff was terminated in June 1993. The District Court granted Veda's motion for summary judgment and this appeal followed.
 
 II.
 A. Summary Judgment Standard
 
 5
 Summary judgment is appropriate "where there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Federal Rule of Civil Procedure 56(c) therefore requires the entry of summary judgment, upon motion, against a party
 
 
 6
 who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.
 
 
 7
 Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In such a case the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo by this Court.
 
 B. Title VII
 
 8
 A Title VII claim may be proved through either direct, indirect or circumstantial evidence. Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Accord Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081 (6th Cir.1994). Plaintiff presents no direct evidence of discrimination and must prove his claim through circumstantial evidence. When proving discrimination by circumstantial evidence, the plaintiff must first make out a prima facie case of discrimination. The burden then shifts to the defendant to set forth a non-discriminatory reason for its action and then the burden shifts back to the plaintiff to produce evidence that the proffered non-discriminatory reason was pretextual. Manzer, 29 F.3d at 1081-84.
 
 
 9
 The prima facie case is made by introducing evidence sufficient to support a finding that (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position and (4) a person not in the protected class replaced plaintiff. Id.
 
 
 10
 The District Court found that plaintiff met the requirements for a prima facie case. D.Ct.Op. at 5, J.A. at 23. We agree. Defendant asserts that no one replaced plaintiff and plaintiff therefore cannot make a prima facie case. At least one person, however, James Canaday, a Vice-President of Veda, testified that plaintiff was replaced by Brett Givens, a Veda employee working on the cockpit project. Although there is no testimony in the record as to Mr. Givens' religion or national origin, defendant disputes only that plaintiff was replaced, not that Mr. Givens is not an American-born Christian. Read in the light most favorable to plaintiff, as we must for this appeal from a summary judgment motion, the evidence is sufficient to support the inference that plaintiff was replaced by an American-born Christian. We will assume for purposes of this analysis, therefore, that plaintiff has made out a prima facie case of discrimination.
 
 
 11
 The defendant offered a non-discriminatory reason for the plaintiff's dismissal, stating that plaintiff's job performance, specifically his management style with his subordinates, was deficient. See, e.g., Dobrzelecki Dep. at 23-24, J.A. at 256-57; Rountree Dep. at 74-78, J.A. at 402-06 (comments by subordinates included "[Korna] does not have the capability to lead this job and does not know where we are going," employee "did not agree with where Korna was going [and Korna's] direction on how he wanted things to happen). Plaintiff's supervisors at Veda had counseled plaintiff to change his management style after several complaints by plaintiff's staff, but plaintiff concedes he did not change his style. There is also evidence in the record that Veda's customer for the project on which plaintiff was working, the United States Air Force, was dissatisfied with the progress of the project. See, e.g., Dep. of Dobrzelecki at 27, 62-65, J.A. at 245, 251-54; Collins Dep. at 11-12, J.A. at 231-32; Pl.Ex. 21, J.A. at 265.
 
 
 12
 The burden shifts back to plaintiff to demonstrate that the reason given by defendant is pretextual. Plaintiff contends that defendant's stated reason for termination did not actually motivate the discharge and that the real reason he was terminated was due to his practice of the Islamic religion and his Egyptian origins. To prevail on this issue, a plaintiff is required to present sufficient circumstantial evidence to permit a reasonable finder of fact to find that the proffered reason was not the actual reason for the discharge and discrimination was the real motivation. There are three methods by which a plaintiff can demonstrate pretext. A plaintiff may produce evidence that the proffered reasons: (1) have no basis in fact; (2) are insufficient to motivate discharge or (3) did not actually motivate the discharge. Manzer, 29 F.3d at 1084.
 
 
 13
 As evidence of discrimination, plaintiff makes vague references to different treatment by his coworkers and his supervisors. First, it is only treatment by his supervisors that is relevant to the analysis. Different treatment by coworkers with no authority over firing decisions is not relevant. Wells v. New Cherokee Corp., 58 F.3d 233 (6th Cir.1995) (courts must consider as probative evidence any statement made by those individuals who are "meaningfully" involved in the decision to terminate the employee). In Wells, plaintiff's intermediate supervisor, who had made discriminatory remarks, did not possess the authority to fire plaintiff but had "acted jointly" with the firing official in making the decision to terminate plaintiff. The court found that the intermediate supervisor had "contributed significantly to the decision" and that his statements were therefore relevant to the analysis.
 
 
 14
 Here, Veda contends that statements by anyone other than Arthur Dobrzelecki, the General Manager and the only person with the actual authority to fire employees, are irrelevant and should not be considered. Under Wells, however, it would appear that the statements of plaintiff's immediate supervisor, Michael Rountree, would also be relevant. Rountree and Dobrzelecki discussed and analyzed plaintiff's performance. While the final decision to fire appears to have rested with Dobrzelecki, it appears that Rountree "contributed significantly to the decision" and his comments should be considered under Wells.
 
 
 15
 In contrast, the District Court concluded that only Dobrzelecki's comments should be considered because the decision to terminate plaintiff was made without Rountree's "participation, recommendation or even knowledge." D.Ct.Op. at 10-12, J.A. at 28-30. We disagree with the District Court because the evidence demonstrates that Rountree was involved with decisions affecting plaintiff's employment and under Wells Rountree's statements are relevant and probative on the question at hand and should be considered.
 
 
 16
 The difference in interpretation of Rountree's role between this Court and the District Court does not alter our disposition of this case. Even if Rountree's treatment of plaintiff is considered, the statements and comments alleged by plaintiff do not create a genuine issue of material fact as to whether discrimination was the real reason for plaintiff's discharge. Vague, conclusory statements are not sufficient to create a genuine issue of material fact. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990); Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314 (6th Cir.1989) ("isolated and ambiguous" statements insufficient to create a genuine issue of material fact).
 
 
 17
 The only evidence presented with regard to Dobrzelecki, the General Manager and the person who ultimately fired plaintiff, is that he asked plaintiff several times whether plaintiff intended to make the pilgrimage to the Hajj (Mecca) that year. Korna Dep. at 213-14, J.A. at 328-29. Plaintiff concedes that he interpreted the question as Dobrzelecki trying to get "close" to plaintiff and not as a discriminatory remark. Id. at 214, J.A. at 329. Plaintiff also testified that Dobrzelecki treated him differently "because he [Dobrzelecki] believes that people from where I come from are liars." Id. at 216, J.A. at 331. This type of comment, without more, is too conclusory to provide evidence of discrimination based on national origin. See Gagne, 881 F.2d at 314.
 
 
 18
 As to Rountree, it appears from the record that both plaintiff and Rountree are religious men and that Rountree commented on his own deep Christian faith often to plaintiff and others. The record reflects that certain individuals at Veda, including Rountree, held weekly bible classes/prayer meetings on Veda's premises. The fact that bible meetings were held by certain individuals with defendant's knowledge is not evidence that defendant discriminated against non-Christians.
 
 
 19
 Furthermore, there is no evidence that Rountree singled out plaintiff as the recipient of his comments about religion or that he undertook discriminatory conduct in the workplace based on a person's religion. Plaintiff made vague and conclusory statements in his deposition such as "[Rountree] doesn't believe anybody unless they are of the same faith like he is." Korna Dep. at 206, J.A. at 321. There is no evidence that Rountree made disparaging remarks about the Islamic religion or that he discriminated against plaintiff because he was not Christian. Plaintiff points to one instance where Rountree told plaintiff that he wanted to introduce plaintiff to "his God." The statement, however, arose in response to plaintiff's comment to Rountree that Rountree must have "prayed a lot about this one" in reference to a difficult meeting that turned out well for Veda. Plaintiff knew, as did everyone else at Veda, that Rountree prayed often and Rountree had told plaintiff that he often prayed during times of stress. There is no indication that the statement, when read in context, was more than an isolated statement without discriminatory intent. Plaintiff also testified that after the World Trade Center bombing, Rountree referred to the "Middle Eastern Mafia" while talking to a colleague and looked right at plaintiff. Korna Dep. at 258, J.A at 353. While perhaps insensitive, this isolated statement does not indicate that plaintiff was discriminated against by Rountree.
 
 
 20
 The most compelling evidence plaintiff presented to demonstrate discrimination came from a conversation plaintiff had with Rountree almost a year before plaintiff's discharge. Plaintiff testified that Rountree told him in August 1992 that "he [Rountree], [Dobrzelecki] and [Canaday] had a meeting and said that we don't think Medhat's going to work out based on his religion and where he is from." Korna Dep. at 230-31, J.A. at 345-46. But, like the District Court, we believe that although it seems likely that plaintiff misconstrued or incorrectly repeated the statement, it is this one statement that makes the summary judgment question before us a close one. This isolated statement, even if true, is not sufficient to defeat summary judgment in this case. The other evidence overwhelmingly supports the view that it was plaintiff's performance, not his religious preference or place of birth, that motivated the defendant. Plaintiff worked at Veda for nearly another year after this statement was allegedly made and plaintiff offers no further statements or incidents during his tenure that demonstrate discrimination. Like the District Court, we would not uphold a jury verdict for the plaintiff based on this record and do not think the case should be tried on the merits. Plaintiff's evidence is too tenuous and doubtful to get by summary judgment in light of the strength of the case on the other side.
 
 C. Promissory Estoppel
 
 21
 Plaintiff also alleges that he was promised employment for the duration of defendant Veda's contract with the Air Force for the cockpit project. The District Court found, correctly, that there was no evidence of such a promise. D.Ct.Op. at 14, J.A. at 32. Plaintiff concedes in his deposition that he was never promised that he would not be fired. Korna Dep. at 75-76, J.A. at 303-04 (Q. Did anyone say we can't fire you ...? A. No.). Plaintiff contends that it is "the custom in the industry" for employees to stay on for the length of the contract. However, plaintiff himself fired several people working for him on the project. Plaintiff was an at-will employee and had not been hired for any specified term. See offer of employment letter to Korna, J.A. at 229. Nor does plaintiff present any evidence of an implicit contract for a specific term of employment. Accordingly, plaintiff raises no genuine issue of material fact as to his promissory estoppel claim and summary judgment on that claim should be affirmed as well.
 
 III.
 
 22
 Plaintiff has presented little but conclusory statements to support his claim of discrimination. The few isolated comments by his supervisors about his religion seemed to reflect curiosity and an interest in finding out about his religion rather than discrimination, even if some of the attempts were perhaps clumsy and even insensitive. Plaintiff simply failed to show that his religion or national origin was a motivating factor in his discharge. Accordingly, for the foregoing reasons, the opinion of the District Court is affirmed.
 
 
 
 *
 The Honorable Patrick J. Duggan, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 References to the Joint Appendix filed by the parties in this case will be referred to hereinafter as "J.A. at ____."