**Anthony FIOTO, Jr., Plaintiff,**

**v.**

**MANHATTAN WOODS GOLF ENTERPRISES, LLC, Manhattan Woods Golf Club, LLC and Kang Lee a/k/a Ken Lee, Defendants.**

**No. 01 CIV. 5383(CM).**

United States District Court,
S.D. New York.

July 2, 2003.

Todd D. Muhlstock, Mergel, Tubman & Grossman, New York City, for Anthony Fioto, Jr., plaintiff.

Chris P. Termini, McCabe, Collins, McGeough & Fowler, L.L.P., Mineola, NY, for Manhattan Woods Enterprises LLC, Manhattan Woods GC, Manhattan Woods Golf Club, LLC, Kang Lee, Dr. aka Ken Lee, defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, DISMISSING THE MOTION FOR REDUCTION OF DAMAGES AS MOOT, AND DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR "BREECH" OF CONTRACT

MCMAHON, District Judge.

On April 4, 2003, after a three day trial, a jury returned a verdict in favor of plaintiff on two claims against defendants. Count I alleges that defendants violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1)(C), by firing plaintiff from his job as sales manager at Manhattan Woods Golf Club after he took a day off work to be present while his dying mother underwent emergency brain surgery. Count II alleges a breach of contract growing out of the same conduct. The jury awarded plaintiff damages in the amount of $126,825.00 for defendants' violation of FMLA,[1] and in the amount of $74,375.00 for their breach of contract.

---

1. The jury found damages in the amount of $78,631.00 for the year 2000, $48,194.00 for 2001, and no damages for either 2002 or 2003.

Defendants—who moved to dismiss the FMLA claim at the close of plaintiff's case (a motion on which I reserved decision)—now renew their motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), on the ground that plaintiff failed to adduce any evidence that he qualified for FMLA leave. In the alternative, defendants seek reduction in the amount of FMLA damages awarded by the jury, arguing that the damages awarded to compensate plaintiff for the FMLA violation can not, as a matter of logic, be any greater than the damages awarded for defendants' breach of his employment contract. Defendants also ask the court to overturn the verdict in plaintiff's favor on his "breech" of contract claim.

For the following reasons, I grant the motion for judgment as a matter of law and dismiss Count I of the indictment. The motion to reduce damages thus becomes moot. The motion is denied insofar as it addresses the "breech" of contract claim.

**Standard of Review**

 Federal Rule of Civil Procedure 50 provides that a district court can order a new trial or direct the entry of a judgment as a matter of law if a jury returns a verdict for which there is not a legally sufficient evidentiary basis. Fed.R.Civ.P. 50(b). "[T]he same standard that applies to a pretrial motion for summary judgment pursuant to Fed.R.Civ.P. 56 also applies to motions for judgments as a matter of law during or after trial pursuant to Rule 50." *Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir. 1993); *see also This is Me, Inc., v. Taylor,* 157 F.3d 139, 142 (2d Cir.1998) (noting that adoption of the term "judgment as a matter of law" was intended to call attention to the close relationship between Rules 50 and 56). Thus, a court may not grant a motion for a judgment as a matter of law unless "the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir. 1994) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)). In other words, the evidence must be such that "a reasonable juror would have been compelled to accept the view of the moving party." *Piesco,* 12 F.3d at 343.

**FMLA Leave and the "To Care For" Standard**

FMLA provides that an eligible employee is entitled to take up to twelve weeks of unpaid leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). According to the Department of Labor, the "to care for" requirement may be satisfied by the provision of either physical or psychological care. The regulation states:

(A) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical *and* psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygenic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

(B) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrange-

ments for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116.

▆▆▆ As the language of the statute and the regulation make clear, FMLA does not provide qualified leave to cover every family emergency. FMLA leave is only available when an employee is needed "to care for" a family member. FMLA does not cover absences that do not implicate giving physical or psychological care for a relative. And while the statute has been broadly construed—for example, one court has found that assisting in making medical decisions constituted giving "care" to a relative for FMLA purposes, *see Brunelle v. Cytec Plastics*, 225 F.Supp.2d 67 (D.Me.2002)—merely visiting a sick relative does not fall within the statute's parameters. The employee must be involved in providing some sort of on-going care for his relative in order to qualify for FMLA leave. As Magistrate Judge Lefkow stated in *Cianci v. Pettibone Corp.*, 1997 WL 182279 (N.D.Ill. Apr. 8, 1997), a case in which the plaintiff claimed that FMLA had been violated when she was denied an extended leave to visit her ailing mother in Italy, "However sympathetic plaintiff's request to visit her ailing mother may have been and however unfair or uncaring the company's response, the evidence before this court indicates that it is not the type of leave to which she is statutorily entitled." *Id.* at *7.

Both parties agree that plaintiff did not demonstrate that he was needed to take care of his mother's physical needs. Rather, plaintiff contends (and argued to the jury) that he was needed to provide psychological care for his mother.

The trial record shows that on July 15, 2000 plaintiff telephoned his employer to let the club know that he would not be coming to work that day. He testified as follows:

"My mother had been hospitalized for about ten days, and the cancer they had discovered had spread to her brain, and she was going to have brain surgery that day. I didn't know what time the surgery was going to be, I knew it was going—that she was being prepped early in the morning. So I was just calling in early to let them know it was a very serious surgery, that I had been warned there was a good chance that my mother wasn't to get through it and to be there." (Tr. 36)

The record is completely barren about the condition of plaintiff's mother prior to her surgery. It also includes nothing about what plaintiff did at the hospital, except for the fact that plaintiff did not see her after surgery:

I was already upset before I walked through the door [at work the next morning] because I hadn't seen my mother following her surgery. I knew that it went okay, but I was already kind of upset; and when I got this [the memo terminating his employment] it was just like getting kicked in the solar plexus. (Tr. 43)

There is no evidence in the record testimony about Fioto's interaction with his mother or her doctors. All the jury knew was that the plaintiff's mother was having brain surgery; that the doctors told Mr. Fioto that it was serious and that she might not make it through; that she was being prepped early in the morning; that Mr. Fioto did not see his mother after her surgery; and that the surgery went okay. The question is whether plaintiff provided enough information from which a reasonable jury could infer that the plaintiff was needed "to care for" his mother.

Sadly, I believe the answer to be no.

There is a paucity of law on the subject of what constitutes the provision of physical or psychological care to a sick relative.

*Cianci* stands for the proposition—readily derived from the words of the statute—that FMLA leave is not available to accommodate mere visitation with a sick relative. Our sister court in Maine, however, has twice ruled that the concept of "psychological care" includes providing even a minimal level of comfort to a sick relative.

In *Plumley v. Southern Container Inc.*, 2001 WL 1188469 (D.Me. Oct. 9, 2001), plaintiff testified that he spent time with his father while the father was hospitalized. The plaintiff's father testified that his son was present with him and that the son's presence was comforting and reassuring. Magistrate Judge Cohen concluded (albeit in dicta) that this sufficed to meet the threshold of "psychological care" for FMLA purposes, which includes providing "psychological comfort and reassurance which would be beneficial to a ... parent with a serious health condition who is receiving inpatient ... care." *Id.* at *9 (quoting 29 C.F.R. § 825.116).

A year later, in *Brunelle v. Cytec Plastics Inc.*, 225 F.Supp.2d 67 (D.Me.2002), plaintiff was the son of a man who was critically burned in a fire. Plaintiff's father remained hospitalized for several months, enduring several surgeries in what ultimately proved a futile effort to save his life. During that period, the plaintiff kept vigil at his father's bedside. According to the testimony of the father's physician, Brunelle helped doctors make decisions concerning his father's care. Chief Judge Hornby, adopting a decision by Magistrate Judge Cohen, concluded that Brunelle satisfied FMLA's "to care for" requirement.

■ I have no difficulty taking the same view of the law that was taken by the Maine courts. By the very terms of the FMLA regulations, a child's offering comfort and reassurance to a bedridden parent qualifies as "caring for" the parent. Moreover, I will assume for purposes of this motion that assisting in the making of medical decisions on behalf of that parent also qualifies as "providing physical or psychological care" within the meaning of FMLA regulations. Indeed, it seems to me that making medical decisions on behalf of an ailing parent is far more than psychological, and qualifies as assisting in the physical care of the parent.

■ Unfortunately for Fioto, the record is completely devoid of any evidence that Fioto was needed to provide either physical or psychological care for his mother, even under this extremely generous reading of FMLA.

Insofar as psychological care is concerned, the jury knew only that plaintiff went to the hospital and did not see his mother after her surgery. It was not told whether he saw his mother prior to surgery, or whether his mother was conscious or unconscious when plaintiff arrived at the hospital. The jury did not even know whether plaintiff's mother was aware that he was on the way to the hospital, or was capable of being aware of his imminent arrival. It is entirely possible that his mother was aware of her son's presence at the hospital and felt succored and reassured by it. It is equally possible that she never even knew he was there. Indeed, it is possible that defendant's mother was unconscious for some period prior to her surgery—counsel's assertion in his memorandum of law that Mr. Fioto's mother fell into a coma after her surgery has no evidentiary support. Because the language of the statute does not guarantee employees FMLA leave to visit an ailing parent, it was incumbent on plaintiff to demonstrate that he was doing something—anything—to participate in his mother's care. It would not have taken much to meet the very loose "psychological care" standard. The plaintiffs in *Brunelle* and *Plumley*

testified about their interaction with their parents and their doctors. Fioto did not.

Neither is there any evidence that plaintiff provided physical care in the *Brunelle* sense. Although one might well speculate that plaintiff's presence at the hospital was desirable for that purpose, there is no evidence that plaintiff's presence was needed to make medical decisions for his mother—for that matter, there was no evidence that he was the person with legal authority to make such decisions for her—or that he in fact did so. Unlike *Brunelle*, where a physician testified about the plaintiff's interaction with the medical staff and his involvement in decision making, this record is simply and starkly barren.

In short, while it is entirely possible that plaintiff did some or all of the kinds of things that qualify as "taking care of" his mother, it is equally possible that he did none of them. In order to return a verdict in his favor, the jury necessarily engaged in speculation.

Plaintiff argues conclusorily that the phrase "to care for" is to be read broadly to include both physical and psychological care, citing *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1087 (9th Cir. 2002). I agree. However, it cannot be read so broadly that the concept of providing care is read out of the statute. If, on the basis of a bald statement that plaintiff went to the hospital where his mother was having serious surgery, FMLA's "to care for" provision were automatically implicated, the statute would protect mere visitation. By its terms it does not. Congress could have drawn the statute that broadly; nothing could more surely have been antic-

ipated than the need of workers to visit their ailing relatives. It chose to limit FMLA's reach to absences that were occasioned by the provision of care.

Plaintiff also suggests that the testimony of defendant Lee, in which Lee used the phrase "take care of his mom," can substitute for the missing evidence. However, there was no evidence that Lee had any knowledge about what it was that plaintiff was doing or was needed to do, and his use of the conclusory phrase "take care of" is not evidence · from which a reasonable trier of fact could conclude that Fioto qualified for FMLA leave within the meaning of the statute and regulations.

It is beyond question that Lee's behavior following plaintiff's wholly understandable taking of a single day for an important personal reason was uncaring and unfeeling—indeed, it was unreasonable and, as the jury quite properly concluded, a violation of Fioto's contract. But that does not make it a FMLA violation.

Because I am dismissing Count I as a matter of law, I need not reach defendants' alternate argument that the jury awarded excessive damages under the FMLA claim.[2]

■ Defendants' motion for judgment as a matter of law on plaintiff's "breech" of contract claim is denied. Defendants assert, without any support, that the FMLA and contract claims "are one and the same." This, with respect, is utter nonsense. The parties stipulated that the terms and conditions of plaintiff's employment were as provided in the unsigned employment contract dated April 20, 1999.

---

**2.** I note that defendants appear correct in pointing out the illogic of the jury's determination on damages—they awarded different amounts for plaintiff's losses stemming from the same event, his termination. However, defendants are incorrect in concluding that it would be appropriate for me to lower the

FMLA award to match the contract award. It is equally possible that the contract award is too low and should be raised to match the FMLA award. I recognize that, in view of this decision, one or both parties may now move pursuant to Rule 50(c)(2) and Rule 59 for a post-JMOL new trial.

 

They also further stipulated that both sides were operating in accordance with those terms. [Joint Pretrial Order, Stipulated Facts, at 2]. The letter of agreement called for plaintiff to be employed beginning April 19, 1999. The letter also provided that plaintiff could be terminated only for "reasonable cause," which the agreement defined as fraud, misappropriation or embezzlement; negligence; willful disobedience or misconduct in the performance of duties; criminal or immoral behavior; disparagement; and failure to meet the sales quota. [Plaintiff's Exhibit 6]. The defendants contended that Fioto willfully disobeyed Lee's order by taking the day off without first clearing it directly with Lee. It was undisputed that Lee was not in the office when plaintiff called to say he was on his way to the hospital; that his subordinate, Phil Hughes, took the call; and that Hughes told Fioto to go be with his mother.

Viewing the evidence most favorably to the plaintiff, the prevailing party, it is obvious that the jurors concluded that Lee did not have "reasonable cause" to fire Fioto within the meaning of the letter of agreement that the parties stipulated governed the terms and conditions of Fioto's employment. Moreover, the jury made a specific finding (albeit in the context of the FMLA claim) that plaintiff's employment would have terminated on April 30, 2001—the date that the "second bonus period" pursuant to Section 3(b) of the letter of agreement was due to expire—if he had not been fired by Lee on July 16. The jury assessed damages accordingly. These determinations were supported by the evidence—indeed, in the opinion of this Court, they were virtually compelled by the evidence—and they were in no way dependent on the FMLA claim.

The Clerk of the Court is directed to enter judgment in favor of plaintiff on Count II, in the amount of $74,375.00, plus interest at the statutory rate from the date of the breach (July 16, 2000), and to dismiss Count I.

This constitutes the decision and order of the Court.