**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0289n.06
Filed: April 27, 2006

**No. 05-5280**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SHARON K. OVERLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COVENANT TRANSPORT, INC., | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Sharon Overley appeals from the district court's dismissal of her claim that she was wrongfully terminated from her job with defendant Covenant Transport ("Covenant"). Overley argues that her dismissal violated Title VII, 42 U.S.C. § 2000e, the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). The district court granted summary judgment for Covenant on all counts. As we agree that no issue of material fact exists, we affirm.

I.

1

Overley has a daughter who is severely disabled as the result of a childhood injury. The litigation stemming from this injury established a trust fund to pay for her expenses, including residence in a special facility that provides twenty-four-hour care.

Overley was employed by Covenant as a truck driver. She was responsible for a specific route, known as a "dedicated lane," between Indianapolis and Dayton and made round-trips of this route from Monday night through Saturday morning. On January 5 and January 12 of 2002, Overley also did a round-trip on the Saturday of her shift (a "Saturday run"). She had no further Saturday runs until October 2002, when Roberta Cook, her supervisor, informed her that she would have to work on alternate Saturdays going forward. Overley told Cook that she would accept the new schedule but could not work the next three Saturdays, as she had obligations with her daughter. Cook allowed Overley to take the days off, but allegedly told her that if her daughter was a problem, then she should be taken off the job.

In November 2002, Covenant issued a directive to all drivers stating that no time off would be allowed during the upcoming holiday season, except for approved medical or FMLA leaves. Despite this mandate, Overley was allowed to miss her regularly-scheduled run on Saturday, December 21, so that she could attend the wedding of another daughter. She was also allowed to not make the Saturday run on November 30 or December 28, because another driver took her route.

In late December 2002, the customer for whom Overley drove posted its schedule for the week of December 30, including a run on Saturday, January 4, 2003. Overley claims that this was not a regularly scheduled route and that she had plans to care for her daughter on that day. She informed Cook that she did not wish to make the run. Cook responded that Overley would be required to make the run, unless she submitted the proper documentation for a medical or FMLA leave. Overley claims that she was denied the opportunity to apply for FMLA leave. She did send

2

a note to Cook on January 3, but while the note alleged discrimination under Title VII and the ADA, it did not state a need to miss work to care for her daughter. Overley put forth no evidence either that she arranged for another driver to take the shift or that she provided Cook with the name of any driver willing to do so. She simply informed Cook that she would not run the route and told her that there were other drivers available to take the run.

Overley did not report for work on January 4. In lieu of completing her scheduled shift, Overley visited her daughter at the assisted-living home. During the day, Overley also met with Jack Groves, an employee of the facility, about his possible service on a panel to monitor her daughter's trust. This meeting lasted no more than two hours, and during the meeting, the two drove to a lot being considered for the construction of her daughter's future residence. Overley spent the remainder of the day visiting a funeral home and doing her daughter's laundry.

Following the absence on January 4, Covenant initiated an investigation. Though Overley reported to work as scheduled on Monday, January 6, she was informed that she could not work until she had spoken to Jennifer Hoke in Human Resources. The two had several conversations discussing both the absence and FMLA leave. Hoke claims that Overley stated that her absence on January 4 was not related to the FMLA; Overley disputes this account. Based on her refusal to report to work as ordered, Covenant terminated Overley's employment on January 11, 2003.

On June 9, 2003, Overley filed suit in federal district court in Indiana, alleging claims of unlawful termination on the basis of gender discrimination, discrimination on the basis of disability, and violations of the FMLA. The district court granted Overley's motion to transfer the case to the Eastern District of Tennessee. Covenant filed a motion for summary judgment in respect to all claims, which the district court granted. After her motion for reconsideration was denied, Overley filed this timely appeal.

3

II.

This court reviews *de novo* a district court's grant of summary judgment. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 657 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

A.

Overley first claims that she was terminated on the basis of sex in violation of Title VII. Overley has presented no direct evidence of gender discrimination, and thus, she must prove her claim using the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972); *see also Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). First, the plaintiff must establish a prima facie case of discrimination. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159 (6th Cir. 1990). To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was discharged from her employment; (3) she was qualified for the position; and (4) she was replaced by a person outside of the class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The fourth prong of this test can also be satisfied through a showing that a "comparable non-protected person was treated better." *Id.* at 582-83. Put another way, Overley must prove that she was a member of a protected class and that "for the same or

4

similar conduct she was treated differently than similarly-situated non-protected employees." *Id.* at 583. If the plaintiff succeeds in making a prima facie case, the defendant must show a legitimate nondiscriminatory reason for the employment action. The plaintiff then has the burden of showing this rationale to be a pretext for discrimination. *See McDonald*, 898 F.2d at 1160 (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253.).

Overley undoubtedly has satisfied the first two prongs of the *McDonnell Douglas* framework: she is female, and she was terminated. Covenant argues that she has not made out a prima facie case because she cannot meet the third or the fourth element: she was not qualified for the position and similarly-situated males were not treated better.

The district court held that Overley could not satisfy the *McDonnell Douglas* test because, as she failed to report to work as scheduled, she was not meeting her employer's expectations and thus, was not otherwise qualified for the position. *See McDonald*, 898 F.2d at 1160 (citing *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). Overley contends that this conclusion conflicts with this court's decision in *Cline v. Catholic Diocese of Toledo*, as it imports the defendant's proffered nondiscriminatory rationale for the termination (the missed shift) into the initial prima facie analysis. 206 F.3d 651, 660-61 (6th Cir. 2000). While Overley may be correct as to the third prong, we need not decide the issue because she cannot satisfy the fourth prong: showing that a comparable non-protected employee was treated more favorably.

In order to prove this element, Overley must show that the other relevant employees were "similarly situated in all respects." *Mitchell*, 964 F.2d at 583 (emphasis omitted). This means that the individuals compared by plaintiff "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

5

for it." *Id.* Overley has failed to put forth evidence of *any* employee, male or female, who failed to work a schedule shift without making alternate arrangements and was treated more favorably.

Overley contends that males received preferential treatment because they were allowed to switch shifts and she was not. The record simply does not support this contention. Every male driver who testified confirmed that Covenant allows for shift trades, but only if another driver is available to take the run. If another driver cannot be found, the scheduled driver must complete the run. When asked at oral argument, Overley could not point to anything in the record to support her contention that she provided Cook with the name of another driver willing to take the shift. Additionally, no evidence was put forth that another driver requested to take Overley's shift on January 4 and was denied. The record reflects only that Overley informed Cook that she would not make the route and told Cook to find her a replacement. When Cook was unable to do so, Covenant followed its standard policy in insisting that Overley run the scheduled route. The testimony of the other drivers indicates that it was not Covenant's responsibility to find a replacement for Overley; thus, Cook's failure to do so does not permit a finding that males were treated more favorably.

Additionally, Overley's argument ignores the fact that Cook assisted Overley in trading shifts on two occasions during the same holiday season. On both November 30 and December 28, Overley was allowed to give her Saturday run to a different driver with Cook's full approval. Cook also allowed Overley to take time off for her daughter's wedding on December 21 despite the memo stating that no personal vacation would be allowed during the holiday season.

Given the fact that Overley was allowed to trade shifts on other occasions and her failure to put forth any evidence that another driver was available to run her route on January 4, there is no evidence permitting a finding that similarly-situated male drivers were treated more favorably. Thus, she has failed to make out a prima facie case for gender discrimination under Title VII.

6

B.

Overley also alleges that her firing constituted discrimination under the ADA. As she does not suffer from a disability, her claim arises under a provision of the ADA that forbids discrimination against "a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Put another way, Overley is claiming that she was fired because of her daughter's disability.

Few courts have had the opportunity to analyze claims brought under § 12112(b)(4). This court has never done so, only noting in two unpublished decisions that the statute could be used to protect against a limited set of employer actions. *See Smith v. Hinkle Mfg., Inc.*, 36 F. App'x 825, 831 (2002); *Blair v. Prof. Corp. Mgmnt.*, 172 F.3d 47, 1999 WL 17648, at *2 (6th Cir. Jan. 4, 1999); *see also Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir. 2004) (listing potential conduct covered under the statute). An analysis of the ADA's governing regulations and the few published decisions on this issue indicates that Overley's claim does not fall within this narrow subset.

Unlike a claim brought by a disabled person, an employer is not required to reasonably accommodate an employee based on her association with a disabled person. 29 C.F.R. Pt. 1630, App. (§ 1630.8); *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1084-85 (10th Cir. 1997). Thus, Overley cannot claim that Covenant discriminated against her by not granting her sufficient time off or allowing her to modify her schedule so that she could care for her daughter. An employee who cannot meet the attendance requirements of her job is not protected by § 12112(b)(4). *See Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (reaching this conclusion by analyzing the statute's legislative history and governing regulations). Courts have surmised that an employee would be protected under the statute if the employee was only distracted at work, but did

7

not require a reasonable accommodation, *Larimer*, 370 F.3d at 700, or if the employer's decision was based solely on an unsubstantiated belief that the employee would have to miss work because of the association, *Tyndall*, 31 F.3d at 213. Neither of these scenarios is applicable to the case at hand. Covenant did not base its decision on a belief that Overley would have to miss work to care for her daughter, but rather on her record of declined shifts and the absence on January 4. She was "not [] entitled to a modified work schedule," 29 C.F.R. Pt. 1630, App. (§ 1630.8), and nothing in the ADA allows an employee to miss a shift without an excuse, whether or not the person is associated with a disabled individual.

Overley's purported direct evidence of discrimination does not change this analysis. Under a test developed by the Tenth Circuit, a plaintiff can make out a claim under § 12112(b)(4) by showing that: (1) she was qualified for the position; (2) she was subject to an adverse employment action; (3) she was known to have a relative with a disability; and (4) the adverse employment action occurred under a circumstance that raises a reasonable inference that the disability of the relative was a determining factor in the decision. *Den Hartog*, 129 F.3d at 1085; *Larimer*, 370 F.3d at 701-02 (discussing and adopting the test); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999) (applying the test). Overley contends that two comments made by her supervisor (Cook) raise a reasonable inference that she was fired because of her daughter's disability. In both October 2002 and January 2003, Cook told Overley that if she had too much going on with her daughter, then perhaps she should be taken off her job. Even if – for summary judgment purposes – the statements are taken as true, they do not give rise to a claim under § 12112(b)(4). The statements simply reflect a supervisor's concern with an employee who cannot meet certain requirements of her job. *Cf. Tyndall*, 31 F.3d at 215 ("The ADA does not discontinue the dialogue on problems such as substandard job performance or absence from work."). Cook's statements focus on Overley's

8

request for a modified schedule, not on the fact that she has a disabled daughter. As noted above, Covenant had no duty under the ADA to adjust Overley's work schedule or allow her to miss work to care for her daughter. Cook's statements do no more than remind Overley of this limited duty and express concern with her missed work. An employer does not violate the ADA by threatening an adverse employment action in response to an employee's demand for an accommodation to which she is not entitled. The statements do not give rise to a claim under § 12112(b)(4).

## C.

Overley's final claim is that she was terminated in violation of the FMLA. The "entitlement" or "interference" provision of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); *see also Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).[1] To make out a claim, a plaintiff must show that: (1) she is an eligible employee; (2) the defendant is an employer as defined under the statute; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employee was improperly denied benefits to which she was entitled. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The parties do not dispute that Overley was an eligible employee and Covenant was an employer under the statute. Covenant argues – and the district court found – that Overley could not show either that she was entitled to leave under the FMLA or that she gave Covenant notice of her intent to take leave on January 4. As we find the first argument persuasive, we need not reach the second.

_____

[1] The district court also denied Overley's claim that her termination was in retaliation for previously exercising her rights under the FMLA. As Overley did not argue the issue to this court, it is waived. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

9

Overley's stated reason for taking leave on January 4 does not qualify under the FMLA. The statute entitles an employee to take up to twelve weeks of unpaid leave "[i]n order to care for [a child] of the employee, if such [child] has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA does not provide leave for every family emergency. The reason for the leave must fall under the statute and accompanying regulations, which include both physical and psychological care.

> (a) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

> (b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116. Overley has not shown either that she was "needed to care for" her daughter on January 4 or that her activities constituted FMLA-qualifying care. Overley testified that the primary purpose of missing work was to meet with Jack Groves, whom she asked to serve as an overseer of her daughter's trust. Even assuming that this meeting qualifies as providing FMLA-qualifying "care," there is no indication that it needed to occur on January 4. Although the judge previously administering the trust was retiring, Overley put forth no evidence to suggest this placed her daughter in danger of not receiving the necessary care. Additionally, Groves testified that the meeting, which took less than two hours, was not time sensitive and could have been held later in January. During the meeting, Groves suggested that he and Overley drive out to see a plot of land on which a future residence for her daughter might be built. Overley did testify that her daughter's

10

assisted-living residence would be closing, but the record gives no indication of an immediate need to move her daughter to a new location. Moreover, Overley did nothing more than look at the plot of land, on which no construction had begun. A preliminary activity such as this, done as a mere afterthought, cannot be classified as "mak[ing] arrangements for changes in care." Overley testified that the remainder of the day was spent picking up her daughter's laundry (as she did every week), making a preliminary visit with a funeral home, and visiting her daughter to check on her care and condition. Such routine activities do not qualify as "physical or psychological care" under the FMLA, even under the broadest reading of the statute. *See Fioto v. Manhattan Woods Golf Enters., LLC*, 270 F. Supp. 2d 401, 404 (S.D.N.Y. 2003) ("[M]erely visiting a sick relative does not fall within the statute's parameters. The employee must be involved in providing some sort of on-going care for his relative in order to qualify for FMLA leave."), *aff'd*, 123 F. App'x 26 (2d Cir. 2005). As Overley has not shown that she was "needed to care for" her daughter on January 4 or that her activities on this day qualified as "care" under the governing regulations, she has not shown that she was entitled to leave under the FMLA.

III.

The decision of the district court is affirmed.

11